Troy Sweat v. The State.

No. 3629.    Decided June 23, 1915.

1.—Murder—Sufficiency of the Evidence.

Where, upon trial of murder, the evidence sustained the conviction, there was no error on that ground.

2.—Same—Burden of Proof—Charge of Court—Insulting Conduct to Female.

Where, upon trial of murder, the evidence showed insulting words and conduct to defendant's wife and relatives, and the State contended that this was a fabrication, it became necessary to charge the jury that if defendant had been informed that deceased had been guilty of such conduct and believed it to be true, and acting on this information, killed the deceased, he would only be guilty of manslaughter, even though the jury might find that in fact deceased had not been guilty of such conduct. Following Jones v. State, 33 Texas Crim. Rep., 492, and other cases.

3.—Same—Evidence—Dead Witness—Opinion of Witness.

There was no error in reproducing the testimony at an examining trial of a dead witness, but the opinion of the witness was not admissible in evidence.

4.—Same—Newly Discovered Evidence.

Where the alleged newly discovered evidence under the contest of the State hardly came within the rule, but the case was reversed on other grounds, this question need not be decided.

Appeal from the District Court of Robertson. Tried below before the Hon. J. C. Scott.

Appeal from a conviction of murder; penalty, ninety-nine years in the penitentiary.

The opinion states the case.

*H. S. Morehead* and *K. W. Gilmore,* for appellant.—On question of opinion of witness: Roderiquez v. State, 22 S. W. Rep., 978.

On question of insulting conduct to female relative: Gillespie v. State, 53 Texas Crim. Rep., 167; Bays v. State, 50 id., 548; Kanister v. State, 46 id., 221; Hudson v. State, 43 id., 420.

*C. C. McDonald,* Assistant Attorney General, for the State.

HARPER, Judge.—Appellant was convicted of murder and his punishment assessed at ninety-nine years confinement in the State penitentiary.

If the State's theory of the case is the correct one, the punishment is none too severe. The evidence for the State would have defendant, on the morning of the homicide, trading for a new shotgun; going to New

Baden and inquiring for buckshot shells, but when he could not get them, purchasing a box of No. 2 shot—duck shot; when he returned to his home he took his gun and went near the farm of deceased. The deceased was plowing, wholly unarmed. Appellant got into a deep ditch or dugout and trailed up to a point near where deceased would necessarily come in plowing his field. Appellant hid himself behind a bush and as deceased got to the end of the row, and was turning his team, shot two loads of duck shot into the head and body of deceased, being so near the shot did not scatter over three inches. When the first shot was fired deceased said, "Oh, Lordy! Troy, you have shot me." Appellant and deceased were brothers-in-law. According to the State's evidence it was a case of creeping up on the deceased, lying in ambush,—a cold-blooded assassination. Appellant does not deny the killing. His evidence would present the theory that deceased had mistreated his sister, who was the wife of deceased, and had been mistreating her for five years, kicking her and whipping her with a rope, of which facts he had but recently been informed; that deceased had attempted to debauch another sister, a cripple; and in addition to this, had debauched his, appellant's wife. Appellant would give as a reason for trading for the shotgun and the purchase of the shotgun shells, that someone had been about his house the two nights immediately preceding the homicide, and at the time he obtained the gun and shells he thought his life was in danger and he purchased them to protect himself and his property. That after the purchase he returned home, and he and J. C. Willis were talking about the nocturnal visits to his home, when his wife broke down and began to cry; that his wife then confessed to him that the night visitor was deceased; that for years past she had been having carnal intercourse with deceased; that the first act was obtained by force, deceased having a pistol and threatening to kill her; that since said time, to conceal this act, she had met deceased at night whenever he demanded. His theory is that he at once went to the farm of deceased and shot and killed him, and under such circumstances he would be guilty of no higher grade of offense than manslaughter. While there are a number of bills of exceptions in the record, and some twenty-seven exceptions to the charge of the court, each of which we have read carefully, we want to say that the charge of the court is a most admirable presentation of the law of the case, unless it be in the following paragraph of the charge:

"If you believe from the evidence that the defendant did shoot with a gun and kill the deceased, if he did kill him, and you believe that said gun that was used was a deadly weapon, with the intent to kill, did shoot at the deceased and kill him, but you further believe that prior to the said killing, if any, the deceased had used words that were insulting or was guilty of insulting conduct towards any female relations of the defendant, towit, his wife, or his sister or sisters or niece, if there was insulting words or conduct towards his wife or sister or sisters or niece, or carnal intercourse with his wife, and you believe that the defendant killed deceased immediately upon the happening of

the insulting conduct or the uttering of the insulting words or committing of such carnal intercourse, or so soon thereafter as the defendant met with deceased after having been informed of such insult or insults, you will find the defendant guilty of manslaughter. And, in this connection, you are instructed that said Mrs. Troy Sweat and defendant's sister or sisters or niece were female relatives of the defendant as that term has been used herein."

Appellant specially excepted to the following language: "But you further believe that prior to the said killing, if any, the deceased had used words that were insulting or was guilty of insulting conduct towards any female relations of the defendant, towit, his wife, or his sister or sisters or niece, *if there was insulting words or conduct towards his wife or sister or sisters or niece, or carnal intercourse with his wife."* The contention is made that this shifted the burden of proof and required defendant to affirmatively prove that deceased had carnal knowledge of his wife, or prove that deceased was guilty of insulting conduct towards his female relations; whereas, he was entitled to the reasonable doubt on this issue as well as all other issues. The charge is so worded as a whole, that we might be authorized to hold that the jury would not be misled into such belief, but it is further contended that the correct criterion is not whether deceased was actually guilty of those acts, but the jury ought to have been instructed in this connection (it being the paragraph in which manslaughter was submitted for a finding), that it would be immaterial whether or not deceased had been guilty of the acts if they found that appellant had been informed and believed that deceased had been guilty of such conduct, or they had a reasonable doubt of that fact, he would be guilty of manslaughter. It is not so much whether or not the deceased had been guilty of the acts, but the question is, had the deceased been so informed and did he so believe, not whether the jury might find from the evidence on the trial that deceased was or was not guilty of the acts stated. It might be found that the testimony on the trial as to the improper conduct of deceased was an entire fabrication, yet notwithstanding its falsity if appellant had been informed that deceased had so conducted himself, had debauched his home, and he believed it to be true at the time he acted, he would not be guilty of higher grade of offense than manslaughter, even though the trial might convince him that he was in error in such belief. It is the motive that prompted appellant to act at the time he did so, and not what might afterwards be determined to be the true state of facts. If there had been no contest on this issue it might not present reversible error, but the whole trend of the evidence offered by the State was to show that deceased had not been guilty of such conduct; that it was a fabrication pure and simple, and under the evidence, the jury would be authorized to so find, and under such circumstances it became necessary to inform the jury when submitting the issue for a finding to instruct them the law applicable to the case; that if appellant had been informed that deceased had been

guilty of improper relations with his wife, and he believed it to be true, and acting on this information he shot and killed, he would only be guilty of manslaughter, even though the jury might find that in fact deceased had not been guilty of such conduct. Jones v. State, 33 Texas Crim. Rep., 492; Messer v. State, 43 Texas Crim. Rep., 97; Hudson v. State, 43 Texas Crim. Rep., 420; Bays v. State, 50 Texas Crim. Rep., 548; Gillespie v. State, 53 Texas Crim. Rep., 167.

The only other bill in the record we deem it necessary to notice, as the others present no error, is bill No. 5, which shows that J. W. Chase, who testified at the examining trial, is dead. This rendered admissible any testimony he gave on that trial that would be admissible if he were living, but an objection is urged to the following question and answer: "You say you saw a man turn and walk off—did you recognize who it was?" Ans. "Well, I couldn't tell, but it run into my mind that it was Troy." If he could not identify the man, what might have run into his mind would not be admissible, and the objection to this portion of the testimony should have been sustained.

The alleged newly discovered evidence will not be newly discovered on another trial; therefore, it is not necessary to discuss whether or not it is such evidence as would authorize the court to grant a new trial. Under the contest of the State, we are inclined to think it was not.

Reversed and remanded.

*Reversed and remanded.*