## W. H. Mitchell v. The State.

### No. 5310.   Decided May 5, 1920.

### Rehearing Denied June 23, 1920.

**1.—Manslaughter—Murder—Evidence—Reproduction of Testimony.**

Where, upon trial of murder and a conviction of manslaughter, the record showed that the wife of deceased was a witness upon a former trial of the case, but had since died, there was no error in admitting her testimony introduced on such former hearing, and to permit the stenographer, whose notebook was lost, to testify that her notes were correctly transcribed, and that the narrative statement introduced in evidence was true and correct. Following Pace v. State, 69 Texas Crim. Rep., 27, and other cases.

**2.—Same—Continuance—Second Application.**

Where the second application for continuance showed a want of diligence to secure the absent witness, and that the same facts were given in evidence by several other witnesses, there was no reversible error.

3.—Same—Evidence—Contradicting Witness—Predicate.

Where, upon trial of murder and a conviction of manslaughter, defendant complained of the refusal of the court to prove by his witness that the wife of the deceased, whose testimony had been reproduced, had made a statement to him the next morning after the homicide contradictory of her testimony as given on the former trial, there was no error, for no predicate was laid for impeachment, and because no such testimony appears in the statement sought to be given; besides, there was abundant testimoney from other witnesses contradicting testimony of said wife of deceased.

4.—Same—Rehearing—Rule Stated—Continuance—Want of Diligence.

It is the plain duty of one asking for a continuance to place in the application such allegations, or make such showing, as that the trial court and this court may know what diligence has been used. Following King v. State, 67 Texas Crim. Rep., 63, and other cases.

5.—Same—Second Application for Continuance—Rule Stated.
This court has held that in the absence of some affirmative showing that the application for continuance is the first one, it will be presumed to be a subsequent application.

6.—Same—Defendant's Counsel as Witness—Reproduction of Testimony.

Upon trial of murder and a conviction of manslaughter, where one of the State's witnesses had died since testifying in a former trial, and the State in the course of reproducing the testimony of said witness placed on the witness stand counsel for the defendant, to prove by him that the carbon copy which the official court reporter had identified as a true statement of the testimony, was a true copy of the statement of facts as agreed to by both parties and approved by the court on said former trial, there was no error.

7.—Same—Sufficiency of the Evidence.

Where, upon trial of murder and a conviction of manslaughter the evidence was sufficient to support the conviction under a proper charge of the court, there was no reversible error.

8.—Same—Deadly Weapon—Charge of Court.

Where it was insisted on motion for rehearing that the evidence was not sufficient to support the verdict, because of the lack of testimony showing that the breast-yoke with which appellant struck the fatal blow, was a deadly weapon, or such weapon as was reasonably calculated to produce death, but the record showed that the court duly defined to the jury a deadly weapon and required them to believe that it was such weapon, etc., and there was no objection to said charge of court, there was no reversible error.

Appeal from the District Court of Limestone.  Tried below before the Honorable A. M. Blackmon.

Appeal from the conviction of manslaughter; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*J. A. Tucker, Wm. Kennedy, James Kimbell* and *W. T. Jackson,* for appellant.

On question of deadly weapon: Washington v. State, 110 S. W. Rep., 751; Hamilton v. State, 131 S. W. Rep., 1127; Crow v. State, 116 S. W. Rep., 52.

*Alvin M. Owsley,* Assistant Attorney General, for the State.—Cited cases in opinion.

LATTIMORE, Judge.—Appellant was tried in the District Court of Limestone County on a charge of murder, was convicted of manslaughter, and his punishment fixed at five years in the penitentiary. This is the second appeal of this case See 85 Texas Crim. Rep., 251, 209 S. W. Rep., 743.

Deceased and appellant married sisters, and from the testimony of several witnesses, it appears that they had been hostile toward each other for some time, but that on the night of the homicide, appellant and his family came to a public dance and ice-cream supper at the home of deceased. Some time after midnight, deceased and a son of appellant, seem to have engaged in some kind of wordy altercation out in the yard, at some stage of which the appellant hastily approached deceased, and struck him on the head with the breast-yoke of a wagon, which blow caused the death of deceased some time during the day following. The evidence presents sharply conflicting stories, as same comes from the witnesses for the State or the appellant, but these matters of conflict have been settled by the jury, and the record contains ample facts upon which to predicate this conviction.

The wife of deceased was a witness upon a former trial of the case, but has since died. The State was permitted, over objection, to introduce her testimony on the instant trial, as given upon said former hearing. The objection to this matter, as presented by appellant's bill of exceptions, has so often been before this Court, and by it analyzed, and the authorities collated and reviewed, that any further discussion now would be repetition. We adhere to the rule that such evidence, when properly proven up, is admissible. Dowd v. State, 52 Texas Crim. Rep., 563; Nixon v. State, 53 Texas Crim. Rep., 325; 109 S. W. R., 931; Porch v. State, 51 Texas Crim. Rep., 7, 99 S W. Rep., 1122; Robertson v. State, 63 Texas Crim. Rep., 216, 142 S. W. Rep., 533; Sweat v. State, 77 Texas Crim. Rep., 287, 178 S. W. Rep., 554. Objection was made to the introduction of said testimony, because the original note-books used by the stenographer in taking down the testimony, were lost. The stenographer testified that her notes were correctly transcribed, and that the narrative statement of the said deceased witness, which was offered in evidence in the instant case, was correct and true. It was also shown that the

statement of facts was agreed upon as correct, upon the appeal from the former conviction had at said former trial. There is no prescribed method or rule for reproducing testimony given at a former hearing, and it may be given by the stenographer, or other person who heard it, and are able to affirm the correctness of the reproduction offered. Pace v. State, 69 Texas Crim. Rep., 27, 153 S. W. Rep., 132; Roquemore v. State, 59 Texas Crim. Rep., 568, 129 S. W. Rep., 1120; Cornelius v. State, 54 Texas Crim. Rep., 173, 122 S. W. Rep., 251.

An application for continuance was made by appellant. The absent witnesses were Mrs. Alma Williams, Ura Bailey, and Clarence Johnson. The two latter appeared during the trial, and testified in the case. This was a second application, and we think no diligence is shown to secure the attendance of Mrs. Alma Williams; and that it also appears that the same facts stated as expectant from her, were given in evidence by several other witnesses.

Error is based on the refusal of the trial court to permit appellant to prove by Jim Walts, that the wife of deceased, Mrs. Jordan, whose testimony had been reproduced by the State, had made a statement to him the next morning after the homicide, contradictory of her testimony as given on the former trial, and as reproduced on the instant hearing. It appears that this testimony was refused, because no predicate was laid for impeachment, and because the testimony of said Walts, as presented on the former trial in the shape of an affidavit, contained no such testimony as appears in the statement now sought to be elicited from him, impeaching the testimony of Mrs. Jordan. The appellant wished to prove by Walts that on the morning after the homicide, Mrs. Jordan told him that she had taken a pistol off the body of her husband shortly after he was struck by appellant the fatal blow. The testimony was rejected for the reason stated. This testimony should have been admitted. Lyles v. State, 64 Texas Crim. Rep., 621, 142 S. W. Rep., 592; Hamblin v. State, 34 Texas Crim. Rep., 368, 30 S. W. Rep., 1005. However, we are of opinion that its rejection in the instant case was harmless error. The only purpose of such testimony would have been to contradict or impeach Mrs. Jordan. Looking to her testimony, as given on this trial, we find that she stated positively that she did not remove a pistol from her husband's bosom the night he was killed, and did not take any from his body; that her husband had no pistol on that night; that he owned no pistol. She further stated that John Mitchell found a pistol the next morning outside their fence, but it did not belong to her husband. Looking to the testimony of said witness Walts, it will be observed that he swore positively to seeing deceased with a pistol shortly before the fatal blow was struck, and directly afterward he saw that same pistol in possession of Mrs. Jordan, and that he saw it in her hands the next morning. From the testimony of Felton Carroll and Evie Sanders, it also appears that they testi-

fied fully for appellant, stating that Mrs. Jordan had a pistol that night, which came off the body of her husband, and which they were directed by her to take from his body. In other words, the record discloses that appellant introduced numerous witnesses, whose testimony was wholly contradictory to that of Mrs. Jordan, and put her in the attitude of being impeached as completely as would the added statement of said witness Walts that she told him that she took the pistol from the body of her husband. We think the error harmless for the further reason that if Mrs. Jordan had stated to the witness Walts that she had taken said pistol from the body of her husband, it would have afforded no justification for the act of appellant in striking deceased, as appellant did not claim himself, nor did any one for him claim that appellant saw any pistol in possession of deceased before striking him. Appellant stated, that deceased and the son of appellant, were quarreling, and that deceased called the boy a "long-legged son-of-a-bitch," and stated that he was going to kill him. Appellant said that when he called his son this name, and made this threat, deceased threw his hand back to his hip, and he thought that he had a pistol; that he was excited, and struck in defense of his boy. The trial court fully charged on appellant's right to act in defense of his son, whether the danger was real or only apparent, and no exceptions were taken to the court's charge. So, in view of the fact that appellant had the full benefit of abundant testimony contradictory of Mrs. Jordan's testimony, regarding said pistol, and that at least half a dozen witnesses for him testified that deceased had a pistol on the occasion in question, we conclude that no possible harm could have resulted from the error of the trial court in refusing said impeaching testimony of said witness Jim Walts.

Having disposed of the various questions raised in this bill, and finding no reversible error in the record, the judgment of the trial court will be affirmed.

*Affirmed.*

ON REHEARING.

June 23, 1920.

LATTIMORE, Judge.—This case was affirmed at a former day of this term, and is before us on appellant's motion for rehearing. It is urged in said motion that the application for continuance, made when the case was called for trial, should have been granted, because of the absence of Mrs. Alma Williams. Again examining the record in reference thereto, we find that said application contains no showing of any diligence whatever to secure the presence of said witness. The instant trial began January 26, 1920. The indictment shows to have been returned September 4, 1918, a year and a half before this trial. No subpœnas are attached to the motion, or appear in the record, and

the only statement in said application as to diligence, is that "said witnesses had been duly subpœnæd." It is not stated that she was in attendance upon court at any time, nor that she had ever before disobeyed process, nor when the subpœna was issued. It is the plain duty of one asking for a continuance to place in the application such allegations, or make such showing, as that the trial court and this court may know what diligence has been used. Massie v. State, 30 Texas Crim. App., 64; Isham v. State, S. W. Rep., 594; King v. State, 30 Texas Crim. App., 64; Isham v. State, 49 S. W. Rep., 594; King v. State, 67 Texas Crim. Rep., 63, 148 S. W. Rep., 325.

Appellant states in his motion, that said application was the first one, but no such statement anywhere appears in the record. On the contrary, the bill of exceptions reserved to the action of the trial court in overruling this application, states that it was a second application. This Court has held that in the absence of some affirmative showing that the application for continuance is the first one, it will be presumed to be a subsequent application. Branch's Ann. P. C., Vol. 1, Sec. 313.

Error was also urged originally upon the ground that the trial court should not have permitted the State to put on one of appellant's counsel as a witness, and to prove by him that the carbon copy, which Miss Dierlam, the official court reporter had identified as a true statement of the testimony of the deceased witness, Mrs. Jordan, was a true copy of the statement of facts as agreed to by both parties and approved by the court upon the former trial. Neither as originally presented, nor in this motion, are we cited to any authority upholding this contention. · The fact that the witness was an attorney of the accused was not a valid objection. Section 345, Branch's Penal Code, Vol. 1. Miss Dierlam, the official court reporter, had earlier testified that she took down the testimony of the deceased witness upon a former trial, in shorthand; that she had searched for her original notes, but that they were lost; that she made a careful and accurate transcription of said notes of the former trial, and that the copy showed her, which was the same one shown the witness Jackson, attorney for appellant, was an exact carbon copy of such transcript, and she stated, after having read the statement, that the matter refreshed her memory, and that also by referring to her independent recollection, she was able to state that the same contained a true statement of the deceased witness. In this condition of the record, we do not think it error to permit the witness, Miss Dierlam, and the witness Jackson, to testify that the copy identified was a true copy of the statement of facts, in so far as the testimony of Mrs. Jordan went. The original stenographic record was lost. If it had been in existence, Miss Dierlam's statement of its contents would have been uncontrovertible. If the copy did not speak the truth, appellant had every opportunity and right to assail same. No error appears in overruling this objection.

· We have reviewed the facts of the case, and adhere to our former ruling that the rejection of the testimony of the witness Walts was harmless error.

It is further insisted that the evidence was not sufficient to support the verdict, because of the lack of testimony showing that the breast-yoke with which appellant struck the fatal blow, was a deadly weapon, or such weapon as was reasonably calculated to produce death; and further, that the weight of said breast-yoke was not shown. The court duly defined to the jury a deadly weapon, and required them to believe that it was such a weapon, and that from its character or the manner of its use, etc., by appellant, it was reasonably calculated to inflict death, and no exception to this charge appears in the record. In this same connection, and as a part of said definition, the court specifically told the jury that if the instrument used was one not likely to cause death, it would not be presumed that death was intended. The breast-yoke was that of an ordinary farm wagon. Appellant admitted that he struck deceased one blow on the head with same, further admitting that he may have used both hands. The blow was such as to render deceased unconscious, and he never at any time recovered consciousness before his death the day following. The physician said this blow caused the death of deceased; that it was a tolerably large wound, and cut through the flesh and muscles to the bone, and it seemed to him to make a dent on the skull. No requested charge on the character of the weapon was asked, or can be found in the record. Our Statute, Art. 1082, Branch's Ann. P. C. states that if the death of deceased unquestionably resulted from the injury inflicted by the accused, the case is one of homicide. The trial court submitted both grades of homicide in a manner apparently satisfactory to the accused. With this charge before them, and probably remembering that the State's testimony showed that at the time appellant struck the deceased, the wife of the latter had hold of his hands, and was pulling him away from where appellant was, the jury declined to believe, or find him guilty of any lower grade of homicide than murder. The question, what is a deadly weapon, is one of fact for the jury, under appropriate instructions of the court, and unless it affirmatively appear that there was no evidence supporting their finding, or that such finding is against the weight of the testimony, we will uphold the action of the trial court in refusing a new trial based on the insufficiency of the testimony.

The motion for rehearing will be overruled.

*Overruled.*