Albert H. CARTER, Petitioner-Appellee,

v.

W.J. ESTELLE, Jr., Director, Texas
Department of Corrections,
Respondent-Appellant.

No. 80–1981.

United States Court of Appeals,
Fifth Circuit.

Nov. 18, 1982.

Douglas M. Becker, Asst. Atty. Gen., Austin, Tex., for respondent-appellant.

Arnold Anderson Vickery, Houston, Tex., for petitioner-appellee.

ON PETITION FOR REHEARING AND
SUGGESTION FOR REHEARING
EN BANC

Before POLITZ and RANDALL, Circuit Judges, and PARKER*, District Judge.

RANDALL, Circuit Judge:

On petition for panel rehearing and rehearing en banc, the State of Texas has asked us to reconsider our panel holding, 677 F.2d 427 (5th Cir. 1982), in the light of the Supreme Court's recent decision in *Tibbs v. Florida,* —— U.S. ——, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). We are in agreement with the State that *Tibbs* has had a significant impact in the law of double jeopardy. As a result, we take this opportunity to modify several statements made in our earlier opinion in the light of *Tibbs.* However, as we show *infra,* the result in the case remains unchanged, and we reaffirm our conclusion that a writ of

* Chief Judge of the Middle District of Louisiana, sitting by designation.

habeas corpus was properly granted by the district court, 499 F.Supp. 777, in this case.

The byzantine procedural history of the case is dwelt upon in considerable detail in our panel opinion and will not be repeated here. Suffice it to say that petitioner Carter was indicted for and convicted of embezzlement in 1972, his conviction was reversed by the Texas Court of Criminal Appeals in 1974, *Carter v. State,* 510 S.W.2d 323 (Tex.Cr.App.1974), and he was subsequently reindicted, tried, and convicted in the same year. Carter then filed one of his many habeas corpus petitions in federal court, claiming that his 1974 conviction was barred by double jeopardy because the 1972 conviction had been reversed for evidentiary insufficiency. We held that Carter's habeas petition met the requirements of the exhaustion doctrine[1] and agreed that his 1974 reconviction violated the rule of *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978). Relying on our recent decision in *Bullard v. Estelle,* 665 F.2d 1347 (5th Cir. 1981), *cert. granted,* —— U.S. ——, 102 S.Ct. 2927, 73 L.Ed.2d 1328 (1982), we concluded that the 1978 decisions in *Burks* and *Greene* applied retroactively to the 1974 conviction and affirmed the district court's grant of habeas relief.

On June 7, 1982, a week after our opinion was issued, the Supreme Court decided *Tibbs,* and held that although reversals by an appellate court for evidentiary insufficiency continue to create a double jeopardy bar under *Burks,* reversal of a conviction because it was against the weight of the evidence does not preclude retrial. The State of Texas now claims that the reversal of Carter's conviction was based on the weight and not the insufficiency of the evidence, and hence that *Burks* is inapplicable.[2]

It is perhaps an inevitable consequence of *Tibbs* that unsuccessful prosecutors will be tempted to recast every reversal for evidentiary insufficiency by an appellate court as a reversal based on weight so as to gain the "second bite at the apple," *Bullard, supra,* at 1362, forbidden them by the Constitution. But the Supreme Court's opinion in *Tibbs* itself makes clear that this strategy will meet with only limited success:

> [T]rial and appellate judges commonly distinguish between the weight and sufficiency of the evidence. We have no reason to believe that today's decision will erode the demonstrated ability of judges to distinguish legally insufficient evidence from evidence that rationally supports a verdict.

—— U.S. at ——, 102 S.Ct. at 2220 (footnote omitted).

The Supreme Court earlier in the opinion had itself given a succinct explanation of the difference between the two standards:

> A conviction rests upon insufficient evidence when, even after viewing the evidence in the light most favorable to the prosecution, no rational factfinder could have found the defendant guilty beyond a reasonable doubt. A reversal based on the weight of the evidence, on the other hand, draws the appellate court into ques-

1. When this case was first argued before us, the major focus of debate was the exhaustion issue; however, the State has not contested our determination of this issue in its petition for rehearing, but has instead focused upon the double jeopardy issue. Ironically, the State conceded at oral argument that as the Texas courts construe their own and federal law, Carter would clearly be entitled in a state habeas proceeding to reversal of his 1974 conviction under a double jeopardy bar. Counsel for the State argued that dismissal of the federal petition for failure to exhaust would thus not prejudice Carter's ability to challenge his 1974 conviction. When asked why the State was so eager to force Carter into a forum where the

State would be sure to lose on the merits, counsel for the State made the interesting response that the State sought dismissal of the federal petition only to ensure that Texas courts would have the first opportunity to pass on the federal constitutional issues. The intervening decision in *Tibbs* apparently has altered its philosophy of litigation.

2. Although the State nowhere explicitly raises the point, all of its arguments rely on the assumption that *Tibbs* applies retroactively to the 1974 conviction. For purposes of this opinion, we assume, without deciding, that since *Burks* applies retroactively, so does *Tibbs.*

tions of credibility. The "weight of the evidence" refers to "a determination [by] the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other."

*Id.* at ——, 102 S.Ct. at 2216 (quoting *Tibbs v. State,* 397 So.2d 1120, 1123 (Fla.1981) (*Tibbs II*)).

> *Burks v. United States* and *Greene v. Massey* carved a narrow exception from the understanding that a defendant who successfully appeals a conviction is subject to retrial. In those cases, we held that the Double Jeopardy Clause precludes retrial "once the reviewing court has found the evidence legally insufficient" to support conviction. *Burks, supra,* [437 U.S.] at 18, 98 S.Ct., at 2150; *Greene, supra,* [437 U.S.] at 24, 98 S.Ct., at 2154. This standard, we explained, "means that the government's case was so lacking that it should not have even been *submitted* to the jury." *Burks, supra,* [437 U.S.] at 16, 98 S.Ct., at 2149 (emphasis original).

*Id.* —— U.S. at ——, 102 S.Ct. at 2217. A reversal on [the] ground [that the verdict is against the great weight of the evidence], unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. Instead, the appellate court sits as a "thirteenth juror" and disagrees with the jury's resolution of the conflicting testimony. This difference of opinion no more signifies acquittal than does a disagreement among the jurors themselves. *Id.* at ——, 102 S.Ct. at 2218.

The Supreme Court then considered the reversal of the first conviction in *Tibbs v. State,* 337 So.2d 788 (Fla.1976) (*Tibbs I*), and decided whether it rested on lack of weight or sufficiency.

> A close reading of *Tibbs I* suggests that the Florida Supreme Court overturned Tibbs' conviction because the evidence, although sufficient to support the jury's verdict, did not fully persuade the court of Tibbs' guilt. The plurality based its review on a Florida rule directing the court in capital cases to "review the evi-

dence to determine if the interests of justice require a new trial, whether the insufficiency of the evidence is a ground of appeal or not". . . . References to the "interests of justice" and the justices' own "considerable doubt" of Tibbs' guilt mark the plurality's conclusions. Those conclusions, moreover, stem from the justices' determination that Tibbs' testimony was more reliable than that of Nadeau. This resolution of conflicting testimony in a manner contrary to the jury's verdict is a hallmark of review based on evidentiary weight, not evidentiary sufficiency. Any ambiguity in *Tibbs I,* finally, was resolved by the Florida Supreme Court in *Tibbs II.* Absent a conflict with the Due Process Clause, . . . that court's construction of its prior opinion binds this Court. In *Tibbs II,* of course, the court unequivocably held that *Tibbs I* was "one of those rare instances in which reversal was based on evidentiary weight." 397 So.2d 1120, 1126 (1981) (per curiam).

*Id.* —— U.S. at ——, 102 S.Ct. at 2220–21 (footnotes omitted). The Court added in a footnote, *id.* at —— n. 24, 102 S.Ct. at 2221 n. 24, that *Greene v. Massey* stands for the proposition that "the meaning attached to an ambiguous prior reversal is a matter of state law." Thus, both from its own reading of *Tibbs I,* the relevant Florida law, and later Florida cases construing *Tibbs I,* the Supreme Court concluded that the opinion was a reversal based upon the weight rather than the sufficiency of the evidence. The proper method of analysis having been explained by the Supreme Court, we now apply it to our own case.

We must first consider whether the language of the Court of Criminal Appeals suggests that it did in fact engage in a weighing of the evidence in *Carter v. State,* as the State claims it did. For ease of analysis, we here reprint the relevant portions of the court's brief opinion:

> The State's proof was that Andrew Dolce was the president of Consolidated Productions, Incorporated, a seller of plastic toys and animals, and that appellant was employed as a sales representa-

tive for that corporation, by virtue of which, so Dolce testified, appellant became his agent. Appellant's duties consisted of calling on and securing orders for the plastic items from schools and related organizations interested in selling the items in fund raising projects. Generally the orders secured were entered on an order form on which there was a prominently printed notice that all checks were to be made payable to Consolidated Productions, Inc.

Some of the checks issued in payment for orders secured by appellant were made payable to and received by Consolidated Productions, Inc.; however, other checks were made payable to either the corporation and appellant or to appellant and were received by appellant. These latter checks were deposited in a bank account and withdrawn by appellant; the proceeds from these checks were not received by the corporation. The office manager of the corporation testified that all payments should have been remitted to the corporation, and that as a result of appellant's activities, the corporation sustained a loss of approximately $40,000. Andrew Dolce testified that, although appellant had authority to receive the checks in his capacity as agent and remit the money to the corporation, he did not give appellant authority or permission to convert the checks to his own use and benefit. *Dolce was not asked if, and he did not testify that, he was the owner of the money alleged to have been embezzled by appellant, or that, as president of the corporation, he had the care, control and management of such funds.*

In brief, the trial court charged the jury to find the appellant guilty if they found that appellant was the agent and employee of Andrew Dolce and that he did embezzle and convert to his own use without the consent of Dolce the money belonging to Dolce that had theretofore come into the possession of appellant by virtue of his employment as such agent and employee.

*Having alleged ownership of the money to be in Andrew Dolce, the State was* *required to prove that essential allegation, Easley v. State, 167 Tex.Cr.R. 156, 319 S.W.2d 325 (1959), although proof that Dolce was a special owner, under a proper charge of special ownership, would have been sufficient. Lawhon v. State,* 429 S.W.2d 147 (Tex.Cr.App.1968). The State maintains that the proof shows Dolce was the special owner of the funds and that the jury was charged accordingly so as to bring this case within the rule of *Lawhon.* We do not agree.

In *Lawhon,* as here, the indictment alleged ownership of embezzled funds to be in an individual whom the proof showed to be the president of a corporation; but, in *Lawhon,* the proof showed further that the individual named in the indictment, as president of the corporation to which the embezzled funds belonged, had the care, control and management of the funds, and the court charged the jury that they might not convict unless they found that the president did have the care, control and management of the funds. *Here, the only evidence of ownership of the funds in question is the testimony that such funds should have been remitted to the corporation; there is no proof that Dolce either owned the funds or that, as president of the corporation, he had the care, control and management of such funds.*

The State having failed to prove its allegation of ownership of the funds in question, a reversal of the conviction must follow. *Easley v. State,* supra. The ground of error submitted by appointed appellate counsel, whom appellant says cannot adequately represent him in this appeal, is sustained.

510 S.W.2d at 325–26 (emphasis added).

The State has argued in its petition for rehearing en banc that "the opinion of the Court of Criminal Appeals reversing the judgment of conviction is devoid of any language specifically finding that the evidence was insufficient on any element of the offense." Petitioner's brief at 7. Yet the Court's reference to *Easley v. State* shows that it regarded ownership as an

essential element of the offense, and it specifically held that there was *"no proof"* that Dolce, the alleged owner, was the owner or special owner of the funds. 510 S.W.2d at 326. The State's characterization of this last passage is interesting:

> [T]he court suggested that the state might have cured any defect in its case by giving a charge on special ownership, *id.,* but that in the absence of such a charge, the weight of the evidence failed to show "that Dolce either owned the funds or that, as president of the corporation, he had the care, control and management of such funds." (*Id.*).

Petitioner's brief at 7.

Much as we are intrigued by the State's exercise in creative editing, we must point out that the words directly preceding the quotation from *Carter v. State* are not "the weight of the evidence failed to show" but rather "there is no proof." Moreover, the court's point was not that the proof failed simply because no instruction on special ownership had been requested, but, that even if it had been requested and given, the case could not have gone to the jury because there was no evidence of special ownership by Dolce; *i.e.,* care, control and management of the funds. The inescapable conclusion is that the reversal in *Carter v. State* was based upon a perceived evidentiary insufficiency and not a reweighing of the evidence by the Court of Criminal Appeals.[3]

It may perhaps be objected that this variance between the indictment and proof is not the sort of error which should constitute evidentiary insufficiency and require application of *Burks.* But the Texas courts have consistently so held. Texas case law makes clear that "where one person is alleged to own property, but it is shown to be owned by another, or by a corporation, the State has failed to prove ownership as alleged." *Roberts v. State,* 513 S.W.2d 870, 871 (Tex.

Cr.App.1974) (reversing conviction because State had failed to show actual or special ownership.) We have already explained in our panel opinion how, in *Compton v. State,* 607 S.W.2d 246 (Tex.Cr.App.1980), *cert. denied,* 450 U.S. 997, 101 S.Ct. 1701, 68 L.Ed.2d 197 (1981), the Court of Criminal Appeals, under the older interpretation of the concept of ownership (and the same one used in *Carter*), stated that a failure of proof of ownership by the person alleged in the indictment required reversal and application of *Burks* and *Greene;* on rehearing the court reinterpreted the definition of ownership so as to sustain the conviction. *See* 677 F.2d at 453–54. Although the original opinion in *Compton* was modified on rehearing, the rule that a failure of proof of actual or special ownership as alleged is treated by the Texas courts as requiring application of *Burks* and *Greene* is still sound. The Court of Criminal Appeals so held in *Gibbs v. State,* 610 S.W.2d 489 (Tex. Cr.App.1980), decided after *Compton,* and relying in part on the 1974 opinion in *Carter v. State.* In *Gibbs,* the defendant had been convicted of theft of a socket kit owned by Montgomery Ward and Company. The court explained:

> As noted in the summary of the evidence, no witness testified that Montgomery Ward and Company, Incorporated, owned the socket set. Under these circumstances, we are led to the ineluctable conclusion that reversible error has been demonstrated. We say, as we did in *Roberts v. State,* 513 S.W.2d 870, 871 (Tex.Cr. App.1974): The State has failed to prove its allegations, and for this reason the conviction must be reversed. *Accord: Carter v. State,* 510 S.W.2d 323, 326 (Tex. Cr.App.1974); *Araiza v. State,* 555 S.W.2d 746 (Tex.Cr.App.1977).

Having held that there is a fatal variance between the evidence adduced upon

---

**3.** The State contends that the Court of Criminal Appeals failed to construe the evidence in the light most favorable to the jury's verdict, pointing out that its unsuccessful petition for rehearing in *Carter v. State* had raised this very issue. Of course, it is likely that rehearing was denied precisely because the court felt it had viewed the evidence properly. Nevertheless, the State argues that there is no language in the opinion which indicates that the Court of Criminal Appeals applied the correct standard for assessing evidentiary sufficiency. However, we think the finding of "no proof" indicates that the proper standard was applied.

the trial and the information, we must reverse the judgment of the trial court. Under the rules enunciated in *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); and *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), we are compelled to order the dismissal of the prosecution. *Doty v. State,* 585 S.W.2d 726, 728 (Tex.Cr.App. 1979).

The judgment is reversed and the prosecution dismissed.
610 S.W.2d at 490–91.

Thus, as we explained earlier in our panel opinion, variances of this type are not regarded as mere trial error by the Texas courts but as evidentiary insufficiency.

In light of *Tibbs,* we now modify an earlier statement made in our opinion. There we said that we are not "required to accept without question the state court's own characterization of what constitutes trial error as opposed to evidentiary insufficiency." 677 F.2d at 454 (citing *Bullard,* 665 F.2d at 1359–60). *Tibbs,* however, suggests that such a characterization is binding unless it would conflict with the due process clause. —— U.S. at ——, 102 S.Ct. at 2221. *Tibbs* explained that a reversal by a court under the disguise of evidentiary weight where the State's proof failed to meet the federal due process standards of evidentiary sufficiency outlined in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires a double jeopardy bar regardless of the characterization of the reversal. —— U.S. at —— & n.21, 102 S.Ct. at 2220 & n. 21. In such cases, the characterization is not binding because the failure of proof must be viewed as the equivalent of an acquittal.

However, even under this modification, the result in both the panel opinion and in *Bullard* would remain unchanged. In *Bullard,* we rejected the view that failure of proof of prior convictions at the sentencing phase of a criminal trial constituted trial error, but we did so because there was insufficient evidence on an essential element of proof: the identity of the person convicted of the prior offense with the person being sentenced. That is to say, our

analysis in *Bullard* did demonstrate the existence of a *Jackson v. Virginia* problem at the sentencing hearing which would indeed offend the due process clause. After our decision in *Bullard,* the Texas Court of Criminal Appeals reexamined its prior holdings and agreed that failure of proof of prior convictions at an enhancement proceeding creates a double jeopardy bar as a matter of federal law. *Cooper v. State,* 631 S.W.2d 508 (Tex.Cr.App.1982) (en banc), specifically overruling its decision in *Bullard v. State,* 533 S.W.2d 812 (Tex.Cr.App. 1976). Whatever the retroactive effect of *Cooper,* it is clear that both our circuit and the Texas Court of Criminal Appeals are now in agreement that the characterization of the reversal of Bullard's sentencing as due to trial error was incorrect.

Furthermore, the Texas Court of Criminal Appeals has recently held that the Texas Constitution, Article I, Sections 14 and 19, as well as the United States Constitution, bars a retrial at either the punishment or guilt stage of the trial, where "the evidence is found lacking in the resolution of factual issues presented . . . ." *Ex Parte Augusta,* 639 S.W.2d 481, 485 (Tex.Cr. App.1982) (en banc). In *Augusta,* as in *Cooper* and *Bullard,* the defendant was subjected to multiple sentencing hearings to determine if he had committed two prior offenses which would lead to a finding of habitual offender status and to an enhancement of his sentence. At both Augusta's first and second trials, the State had failed to prove that Augusta's second previous felony conviction had been committed after the first previous conviction became final. The trial court had granted the defendant a new trial because it determined that the evidence presented by the State at the punishment stage was insufficient to establish the alleged sequence of the prior felony convictions. The Court of Criminal Appeals held that this finding of insufficiency of the evidence barred relitigation of the defendant's habitual offender status under both the Texas and United States Constitutions. Thus, the Texas courts have held that the Texas Constitution provides an independent

state ground for barring the relitigation of factual issues insufficiently presented at an earlier trial.

As for the panel opinion in *Carter,* the statement that we were not necessarily bound by the State's characterization of the reversal as trial error or evidentiary insufficiency was dicta, for we agreed with that characterization and applied it to the case. Obviously, there can be no claim that acceptance of this characterization offends the due process clause, for no masking of evidentiary insufficiency as trial error has taken place. It is, instead, the converse of the situation presented in *Bullard. Tibbs* requires that we accept the Texas court's characterization in these circumstances; we thus reiterate our view that cases like *Compton, Gibbs* and *Augusta* show that Texas regards failure of proof of ownership as alleged to require reversal not for trial error but for evidentiary insufficiency under both the Texas and United States Constitutions, and to require the application of a double jeopardy bar under both Constitutions.

Secondly, the State has reiterated its original argument in *Carter v. Estelle,* which we dismissed in a short reference to *Bullard v. Estelle.* 677 F.2d at 455 (citing 665 F.2d at 1360 n. 27). The State's position is that if Carter does not show that evidence at his trial was constitutionally insufficient under *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), so that no rational trier of fact could have found him guilty of every element of the offense charged, the double jeopardy clause cannot apply to bar a second trial. The State seems to suggest that even though a Texas appellate court has already found the evidence insufficient as a matter of state law, *Burks* does not apply unless we also decide that the conviction could not be sustained under federal law and *Jackson v. Virginia.* This was the argument we rejected in both *Bullard* and the panel opinion.

We have just explained that the Supreme Court was of the view in *Tibbs* that *Jackson v. Virginia* "places some restraints on the power of appellate courts to mask reversals based on legally insufficient evidence as reversals grounded on the weight of the evidence .... The Due Process clause ... sets a lower limit on an appellate court's definition of evidentiary sufficiency." —— U.S. at ——, 102 S.Ct. at 2220. Thus, if a state court reverses a verdict and characterizes it as based on weight or does not characterize it at all, insufficiency of the verdict under *Jackson v. Virginia* will create a double jeopardy bar nonetheless. However, when a state appellate court characterizes its reversal of a jury verdict as based upon a test of evidentiary sufficiency—that is, whether evidence exists on each element of the offense sufficient to convince a rational trier of fact—*Burks* applies at that point regardless of how a federal court might have applied *Jackson v. Virginia.* This is because a finding of evidentiary insufficiency means that acquittal was "the only proper verdict" under state law, *Tibbs, supra,* 102 S.Ct. at 2218, and this is equivalent to an acquittal according to *Burks.* In other words, once the state's highest court has decided under state law that the proof is insufficient to support a verdict of guilty, no further *Jackson v. Virginia* analysis by a federal court is necessary. We note that a situation very much like this was presented in *Hudson v. Louisiana,* 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), and the Court's unanimous opinion nowhere adverted to the need for a separate *Jackson v. Virginia* analysis on review to the Supreme Court. Instead, the Court took as controlling the fact that the Louisiana courts viewed the state's case as insufficient to go to the jury under Louisiana law.

We make this point not because we think that the *Jackson v. Virginia* standard is different from the state law standards of evidentiary sufficiency involved in *Hudson* and explained in *Tibbs.* Our point is rather concerned with the time at which a double jeopardy bar occurs. We think that a double jeopardy bar occurred when the Texas Court of Criminal Appeals decided in 1974 that there was no evidence of an essential

element of the offense. As long as we are assured under *Tibbs* that this holding was indeed based on a finding of evidentiary insufficiency under state law, we are not free to disregard it in a habeas proceeding and refuse to apply a double jeopardy bar based on whether the conviction would or would not, in our opinion, also have offended *Jackson v. Virginia.*

■ Moreover, even if we believed that the State's highest criminal court was incorrect in holding that the evidence was insufficient under *Texas law,* we would have to respect its judgment, if the court purported to apply a test of evidentiary sufficiency as opposed to weight. For the double jeopardy clause applies even if the court made an error in applying the sufficiency standard to the record before it. 677 F.2d at 454 (citing *United States v. Scott,* 437 U.S. 82, 97, 98 S.Ct. 2187, 2197, 57 L.Ed.2d 65 (1978) and *Sanabria v. United States,* 437 U.S. 54, 64, 98 S.Ct. 2170, 2178–79, 57 L.Ed.2d 43 (1978)). As a federal court engaged in habeas review, we are not free to second guess the Court of Criminal Appeals' view that the case should not have gone to the jury under Texas law any more than we could second guess an acquittal verdict by a Texas jury.

We must mention one further point which we raised on our own motion: the question whether the Texas Court of Criminal Appeals is even *empowered* to reverse a conviction because it is against the great weight of the evidence. The Supreme Court took pains in *Tibbs* to point out that although reversals based on weight were rare in Florida, they were indeed within the Florida Supreme Court's jurisdiction. —— U.S. at —— n. 8, 102 S.Ct. at 2215 n. 8. While our understanding of the Texas Court of Criminal Appeals' decision in *Carter v. State,* as a decision based upon the sufficiency and not upon the weight of the evidence, permits us to leave this question for another day, we set forth some of the considerations bearing on the question for future reference and express the hope that the Texas courts will have an opportunity to address the question of the jurisdiction of

the Court of Criminal Appeals before we are faced with the applicability of *Tibbs* to a double jeopardy challenge based on a claim that the verdict was against the weight of the evidence.

Article V, Section 6 of the Texas Constitution, which describes the jurisdiction of the Texas Courts of *Civil* Appeals, contains a proviso "that the decision of said courts shall be conclusive on all questions of fact brought before them on appeal or error . . . ." *See also* Tex.Rev.Civ.Stat.Ann. art. 1820 (Vernon); Tex.R.Civ.P. 451, 453, 455. Neither the grant of jurisdiction to the Texas Supreme Court in Article V, Section 3, nor that given to the Texas Court of Criminal Appeals in Article V, Section 5, contains such a proviso. This proviso gives the Court of Civil Appeals its "fact jurisdiction", and in *Gulf, Colorado, and Santa Fe Railway Co. v. Latham,* 288 S.W.2d 289 (Tex.Civ.App.—Galveston 1956, writ ref. n.r.e.), "it was held that a contention that the verdict of the jury is against the overwhelming weight and preponderance of the evidence [so] as to be manifestly wrong presents a fact issue and invokes the fact jurisdiction of the Court of Civil Appeals." *White v. State,* 591 S.W.2d 851, 855 n. 4 (Tex.Cr.App.1979).

It has long been settled in Texas that the absence of fact jurisdiction in the Texas Supreme Court means that "the Supreme Court has no jurisdiction over points [of error] complaining that the finding of the jury was against the weight and preponderance of the evidence which are questions of fact over which Courts of Civil Appeals have exclusive jurisdiction." *White, supra,* at 856. In *White,* the Texas Court of Criminal Appeals was asked to hold that a jury's verdict at a competency hearing "was 'so contrary to the great weight and preponderance of the evidence as to be manifestly wrong and unjust.'" *Id.* at 854. The Court of Criminal Appeals held that as its grant of jurisdiction was similar to that of the Texas Supreme Court, it did not have "jurisdiction to pass on the great weight and preponderance of the evidence . . . ." *Id.* at 856.

*White v. State,* however, did not resolve the issue. *White* arose in the context of a competency hearing which is, as *White* also held, a *civil* proceeding under Texas law. *Id.* at 853–54. Thus *White* could be distinguished as holding only that in reviewing civil verdicts of juries, the Texas Court of Criminal Appeals possesses no fact jurisdiction and may not reverse for lack of evidentiary weight, while it does possess such fact jurisdiction in criminal cases. Nothing in *White* suggests that any such distinction was intended, and the constitutional grant of jurisdiction in Article V, Section 5 does not suggest such a distinction, but we acknowledge that it is a possible limitation on the decision.

Carter maintains, relying on *White,* that it is well settled that the Court of Criminal Appeals does not possess any jurisdiction to consider whether the finding of the jury is against the weight or the preponderance of the evidence. Article 38.04 of the Texas Code of Criminal Procedure states that except for legally mandated presumptions, "[t]he jury, in all cases is to be exclusive judge of the facts proved, and of the weight to be given to the testimony . . . ." *Accord,* Tex.Crim.Proc.Code Ann. art. 36.13 (Vernon). The Court of Criminal Appeals had held on numerous occasions prior to *Carter v. State* that a jury's verdict is conclusive on matters of credibility of witnesses and weight which is to be given to their testimony. *See, e.g., Floyd v. State,* 494 S.W.2d 828, 829 (Tex.Cr.App.1973); *Hopkins v. State,* 480 S.W.2d 212, 220 n. 5 (Tex.Cr.App. 1972); *Northcutt v. State,* 478 S.W.2d 935, 936 (Tex.Cr.App.1972).

On the other hand, the State maintains that the Court of Criminal Appeals' jurisdiction to entertain questions pertaining to the weight of the evidence has been established since "the earliest days of the Republic." While a number of the cases cited by the State contain language suggesting that the court will reverse a jury verdict which goes against the "overwhelming weight" or "great preponderance" of the evidence, only one of the cases, dating from 1911, actually reversed a jury verdict on these grounds. *Green v. State,* 97 Tex.Cr.R. 52, 260 S.W. 195 (1911) (rape conviction based solely on victim's "remarkable" testimony reversed). In most of the cases, the court *affirmed* the verdict against a challenge to the *sufficiency* of the evidence. *See, e.g., Mitchell v. State,* 87 Tex.Cr.R. 530, 222 S.W. 983 (1920); *Taylor v. State,* 87 Tex.Cr.R. 330, 221 S.W. 611 (1920); *Wooldridge v. State,* 86 Tex. Cr.R. 348, 217 S.W. 143 (1920); *Roberts v. State,* 64 Tex.Cr.R. 135, 141 S.W. 235 (1911). In other cases, the verdict was reversed because the State produced *no* evidence on a factual issue, *see, e.g., Rucker v. State,* 599 S.W.2d 581 (Tex.Cr.App.1979); *Danzig v. State,* 546 S.W.2d 299 (Tex.Cr.App.1977); *Gardner v. State,* 85 Tex.Cr.R. 103, 210 S.W. 694 (1919); *Kiernan v. State,* 84 Tex.Cr.R. 500, 208 S.W. 518 (1919), or on grounds having nothing to do with the State's evidence, *Wilson v. State,* 128 Tex.Crim. 175, 79 S.W.2d 852 (1935) (juror misconduct). We note further, that all of the cases mentioning considerations of weight of the evidence were decided over forty years ago, and a number suggest that the jury is the sole judge of the weight of the evidence. *See Patrick v. State,* 105 Tex.Crim. 487, 288 S.W. 1078 (1926); *Wooldridge, supra.*

As stated above, we need not determine whether the Texas Court of Criminal Appeals is empowered to entertain challenges to the weight of the evidence, as was the Florida appellate court in *Tibbs,* since the Court of Criminal Appeals held in *Carter* that there was *no* proof of an essential element of the defendant's crime. It is possible that before this issue is raised on a petition for habeas corpus relief in federal court, the Texas courts may speak directly to the issue.

Accordingly, the petition for panel rehearing is DENIED. No member of the panel nor judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 16) the Suggestion for Rehearing En Banc is DENIED.

SO ORDERED.