[Opinion delivered May 2, 1882.]

## T. & P. R'y Co. v. James B. Chapman.

(Case No. 4538.)

1. NEGLIGENCE.— In a suit for damages resulting from the alleged negligence of railway employees in running over a traveler at a road crossing, it is not error, on a proper state of facts, to submit to the jury the question whether the employees of the company, in the exercise of proper watchfulness and caution in approaching the crossing, should not have discovered the plaintiff on the track, or in danger, in time to have stopped the train.

2. CHARGE OF COURT — TRIAL BY JURY.— A person approaching a railway track at a road crossing is bound to use such precautions as a prudent man would resort to under like circumstances; but any attempt by the court to prescribe the precise thing he should do in exercising such caution, would be an invasion of the province of the jury, by charging on the weight of evidence.

3. NEGLIGENCE.— If horses driven along a public highway become unmanageable from fright, and thus rushing to a road crossing are killed by a passing train, if their fright and unmanageable state were occasioned by the near approach of the train, and that near approach was caused by a failure to give the signals of approach prescribed by statute, the company would be liable in damages, there being no contributory negligence on the part of the driver.

4. DAMAGES — NEGLIGENCE.— A party driving along a public road, whose horses became unmanageable from fright on the near approach of a railway train, was thrown violently by the locomotive from the railway track, whereby injury resulted. In a suit for damages, held,

(1) If the plaintiff's failure to discover the approaching train in time to avoid the danger, and his want of preparedness to avoid the danger when discovered, were not caused or induced by the failure of the railway employees to give the required signals, but were caused by plaintiff's own want of proper care, then the railway company was not responsible, unless its employees were remiss in not endeavoring to stop the train when they saw or should have seen plaintiff's danger.

5. CHARGE OF COURT — FACT CASE.— See opinion for charge of court regarding negligence reviewed and approved.

APPEAL from Lamar. Tried below before the Hon. R. R. Gaines. The opinion states the case.

*Throckmorton & Brown*, for appellant.

I. The court erred in refusing the second, sixth and tenth instructions asked by the defendant, because the plaintiff knew or might have known that the train was approaching in time to have prevented the collision. By the use of ordinary diligence the plaintiff could have discovered the approach of defendant's train in time to have prevented the collision, and he cannot recover, although defendant's employees did not ring the bell nor blow the whistle as required by law. H. & T. C. R. R. v. Nixon, 52 Tex., 19; H. & T. C. R. R. v. Smith, 52 Tex., 183; Slives v. O. & S. R. R., 18 N. Y., 422; Wilds v. H. R. R. R. Co., 29 N. Y., 315; Gonzales v. N. Y. & H. R. R. R., 38 N. Y., 440; Wilcox v. R. W. & O. R. R., 39 N. Y., 358; Zimmerman v. H. & St. J. R. R., 11 Mo., 476; Henze v. St. L., K. & N. R. R., 71 Mo., 636; Flemming v. W. P. R. R. Co., 49 Cal., 253; R. R. Co. v. Houston, 95 U. S. (5 Otto), 702; Teefer v. N. R. R. Co., 30 N. J., 188.

II. The plaintiff saw, or, by the use of ordinary diligence, might have discovered the railroad track before he was in danger, and his failure to use such diligence will defeat his recovery. H. & T. C. R. R. v. Nixon, 52 Tex., 19; Henze v. St. L., K. & N. R. R., 71 Mo., 636; R. R. Co. v. Houston, 95 U. S. (5 Otto), 702; Bellfontain R. R. v. Hunter, 5 Am. Rep., 207; 33 Ind., 335; Teefer v. N. R. R. Co., 30 N. J., 188; P. & R. R. v. Spearen, 49 Pa. St., 60.

III. It was the duty of plaintiff, on approaching the railroad, to stop and look and listen for the train, and his failure to do so was such negligence as will defeat his recovery. Henze v. St. L., K. & N. R. R., 71 Mo., 636; R. R. v. Houston, 95 U. S. (5 Otto), 702; Flemming v. W. P. R. R., 49 Cal., 250; R. R. Co. v. Miller, 25 Mich., 274; Harlan v. St. L. R. R. Co., 64 Mo., 480; Wilds v. H. & C. R. R. Co., 29 N. Y., 315.

IV. The collision with plaintiff was caused by his inability to control his team, and defendant is not liable. Thompson on Neg., 421; Wilds v. H. R. R. R. Co., 29 N. Y., 330, 331.

*Hale & Scott*, for appellee.

GOULD, CHIEF JUSTICE.— As stated by himself, and witnesses who substantially corroborate his testimony, Chapman's case against the railway company may be condensed thus: He was driving an empty two-horse wagon, at a slow trot, eastward, on the much traveled public road from Paris to Clarksville, and when about fifty feet distant (in his depositions he had said yards, but on the stand he corrects

this and says it was feet), suddenly became aware that he was approaching a railroad crossing, not having previously known that the road crossed any railroad track. The direction of the public road and of the railroad were nearly the same, the approach being gradual, and the crossing oblique; and, on discovering the track and crossing, he (as he himself alone testifies) turned his head, and looked west in the direction of the track, and then looked east in advance, and saw nothing. The road at that point was causewayed with poles and was dry, so that the wagon made considerable noise. The wind also was blowing hard from the east, and Chapman says he heard nothing of an approaching train. When he was twenty or thirty feet from the crossing, first one, and then both of his horses indicating alarm, he again looked west and saw that a train was in about fifty or sixty feet of, and approaching the crossing. By this time he says that his horses' forefeet were just about at the railroad track. He endeavored to stop them, but says that they were so frightened that he was unable to do so. He then undertook to hurry them across, but before he had quite cleared the track, his wagon was struck and ruined; one horse was killed and the other wounded, and he himself severely, and probably permanently, injured. There was no sign-board at the crossing as required by law, and the evidence of several persons living in the neighborhood, who saw the collision, is that no whistle was sounded, nor was the bell rung until the train, running at the rate of about fifteen miles per hour, on an up grade, was in from thirty feet to thirty yards of the crossing. There was a cut and embankment, amounting together to from eight to twelve or fourteen feet, reaching within about forty feet of the crossing. There was also a growth of tall weeds on the embankment, and a high fence along the public road. From these causes these witnesses say that Chapman could not see the approaching train sooner than he said he did — unless, indeed, it were the smoke-stack and top of the cars. From a point much more distant from the crossing, they say he might have seen the train,— there being there no obstructions. It was a freight train, and the conductor testifies that he was in the caboose in the rear and saw the plaintiff's wagon one-fourth of a mile from the crossing. He does not state whether he noticed him further after seeing him, or not. The engineer and fireman say they did not see him, but that the bell was rung from fifty to one hundred yards before reaching the crossing, and the engineer says that he sounded the whistle when one-fourth to one-half of a mile off. Witnesses who had examined the locality say that the cut and embankment begin one hun-

dred and eighty-eight feet from the crossing, and were insufficient to conceal an approaching train from one situated as Chapman was, and the employees of the company say that he could have seen the train at distances variously stated from twenty to thirty rods to one-half a mile. There was a verdict in favor of plaintiff, and the reversal of the judgment is claimed by appellant because of alleged errors in the charge of the court as given, and in the refusal of the charges asked.

The material part of the charge of the court, and all of the charges asked and refused, are copied in full. After stating the nature of the plaintiff's suit, and of the defense, the court also stated the statutory provisions requiring railroads to erect sign-boards at the crossings of public highways, and on their approach within eighty rods of the crossing to cause a bell to be rung, or a whistle blown, and making the companies liable for all damages that may accrue by reason of their failure to perform this duty. The charge proceeds:

"4. I charge you, therefore, that if you believe from the evidence that defendant's train, in crossing the road known as the Clarksville and Paris road, came in collision with plaintiff's wagon while plaintiff was attempting to cross the railroad at that point, and thereby injured the wagon and killed one horse and injured plaintiff's person, and that as the train approached said crossing, a bell was not rung, nor a whistle blown, as required by law, and that defendant, at the time, had no sign-board at the crossing as the law demanded, and that but for the neglect of the defendant in not providing said sign-board, and not ringing the bell or blowing the whistle, as required by law, said collision would not have occurred, you will find a verdict for the plaintiff.

"5. If, on the other hand, a collision occurred between defendant's train and plaintiff's wagon at the point above indicated, and if no sign-board was put at the crossing as required by law, and if no bell was rung or whistle blown; and if plaintiff discovered the railroad track and crossing in time to have stopped his team upon the discovery of a passing train; and if, notwithstanding the failure of defendant's employees to ring the bell or blow the whistle, as it was their duty to do, plaintiff, by the use of such diligence and care as a man of ordinary prudence and foresight would exercise under such circumstances, could have discovered the approaching train in time to avoid the collision; and if, as a matter of fact, the failure to ring the bell or blow the whistle did not throw plaintiff off his guard or cause him to relax his diligence, then I charge you that

plaintiff cannot recover, unless you find that, after plaintiff got upon the track, or so near thereto that he could not extricate himself from the danger, and while the train was in position to be stopped so as to avoid the collision, defendant's agents and servants discovered that he was in that position and failed to stop the train.

"6. If defendant's employees rang the bell or blew the whistle eighty rods from the crossing, and continued the signal until it was passed, and if plaintiff discovered that the railroad crossing was in his front in sufficient time to have stopped his team until the train had passed, then defendant is not liable for any damage that ensued from a collision, if any, unless defendant's employees discovered plaintiff on the track or so near thereto that he could not avoid the collision in time to stop the train before reaching him, and failed to stop it.

"7. If defendant's employees rang the bell or blew the whistle as required by law, and plaintiff saw the railroad crossing in time to have stopped his team, and defendant's employees did not discover plaintiff in a position of danger from which he could not extricate himself before it was too late to stop the train, so as to avoid the collision, defendant is entitled to a verdict. So, also, if defendant's employees did not ring the bell, or whistle, as required by law, and such failure did not throw plaintiff off his guard, and if defendant, by the use of the care and diligence defined above, could have discovered the train in time to have stopped his team, and also saw the crossing in such time, and defendant's employees did not discover plaintiff in a position of danger before it was too late to stop the train, defendant is entitled to a verdict.

"8. If the conductor of the train, before reaching the crossing, saw plaintiff driving along the road sufficiently far from the crossing to stop his team before the train reached it, he had the right to conclude that plaintiff would stop before reaching the crossing, and his failure to stop the train would not be such negligence as to render the defendant liable, unless he had time to stop the train after he saw that plaintiff was on the track or so near thereto that he could not avert the danger if the train moved on."

The following charges asked by defendant were refused:

"1st. The failure of the defendant to erect a sign at the crossing of the traveled road, over its track, will not render it liable for damages, arising from the collision there, if plaintiff knew, or by ordinary care might have known, that the railroad track was there.

2d. The failure to ring the bell or sound the whistle on defendant's train will not render it liable for damages arising from a col-

lision with the plaintiff at the crossing of a public road, if the plaintiff knew or might have known that the train was approaching in time to have avoided the injury.

3d. One traveling upon a public highway, approaching a railroad crossing over a railroad track, is required to use ordinary care to ascertain the approach of trains; a failure to do so will prevent a recovery for injuries which are caused by such failure.

4th. If you believe from the evidence that the plaintiff discovered the railroad track when he was at a point out of danger by the approach of the cars, and from which he could have discovered the approaching train in time to prevent a collision, then the failure of defendant to erect a sign at the crossing of the railroad and the public road would not render it liable for damages occasioned by a collision caused by plaintiff's negligence.

5th. If you believe from the evidence that defendant's employees sounded the whistle or rung the bell eighty rods from the crossing, and continued either or both to the crossing, you will find for defendant.

6th. If you believe from the evidence that defendant's employees on the train with which plaintiff collided did not, on approaching the crossing of the Paris and Clarksville road, blow the whistle or ring the bell as required by law, but that if plaintiff had used ordinary care and prudence he could have discovered the approaching train in time to avoid a collision, and that if plaintiff had used such care the injury would not have occurred, you will find for defendant.

7th. If you believe from the evidence that the plaintiff, on approaching the crossing of said railroad, did not look for approaching trains, and that if he had done so the injury would not have occurred, he cannot recover, and you will find for defendant.

8th. If you believe from the evidence that the plaintiff knew of the approach of defendant's train when he was out of danger from the same, and that he drove up on defendant's track knowing the train was near by, and that if he had not done so the injury would not have occurred, he cannot recover, and you will find for defendant.

9th. If you believe from the evidence that plaintiff knew of the approach of defendant's train at a time when he could have prevented the collision, but that his team became unmanageable and rushed on the track, by which means the collision occurred, you will find for the defendant.

10th. It was the plaintiff's duty, upon discovering the approaching train, if not then on the track, to have used all proper care to prevent a collision; and if from the evidence you believe that he did

not do what a prudent man would have done, and that by such failure the injury occurred, you will find for defendant.

11th. Defendant's employees, in operating its train, had the right to presume that the plaintiff, in traveling upon the highway, approaching a crossing upon defendant's railroad, upon being aware of the near approach of a train, would stop his team in time to prevent a collision; and they were not required by law to stop the train to allow his team to cross, when he was aware of the approach of said train."

1st. The first paragraph of the charge is objected to because " it directs the jury to find for the plaintiff, if the neglect to erect a sign-board, ring a bell, or sound a whistle, was the cause of the collision, without calling attention to those acts of the plaintiff that would defeat his recovery." In the next paragraph, however, and in a manner plainly evincing the intention of the court that the two paragraphs should be taken together, the court proceeds to give the jury all needful instruction on this very point. There is no reason to apprehend that the jury failed to consider these two paragraphs of the charge in connection.

In the same assignment of error appellant complains of the refusal of the second, sixth and tenth instructions asked. These instructions in substance require of plaintiff the use of ordinary care and prudence, notwithstanding the absence of the required signals, to discover an approaching train, and when discovered, to avoid a collision. We think their substance is fully and clearly embodied in the fifth paragraph of the charge as given.

2d. That part of the fifth paragraph of the charge which submits to the jury the question of fact whether the failure to ring the bell, or blow the whistle, did not throw plaintiff off his guard or cause him to relax his diligence, is objected to because it is said there was no evidence tending to show that such failure did throw him off his guard. There was evidence tending to show that he discovered the approaching train too late and that the signals had not been given as required; and from this evidence the jury were certainly at liberty to infer that had the signals been properly given, plaintiff would have been put on his guard and would have sooner discovered the approaching train. See Thompson on Neg., Vol. 1, p. 420, citing Pa. R'y Co. v. Ogier, 35 Pa. St., 71.

3d. So it is complained of various paragraphs of the charge, that they submit to the jury the question whether defendant's employees discovered plaintiff on the track, or so near thereto that he could not extricate himself from danger, in time for them to have stopped

the train, because it is said that there was no evidence to which it was applicable. There is evidence that the conductor, who was in the rear part of the train, saw plaintiff in his wagon one-fourth of a mile from the crossing, and whilst the evidence is silent as to whether the conductor continued to notice him, we think it sufficient to make the charge pertinent. Moreover, in our opinion the charge might properly have gone further, and have submitted, in connection, the question whether defendant's employees, in the exercise of proper watchfulness on approaching a public crossing, should not have discovered plaintiff on the track, or in danger, in time to have stopped the train. R'y Co. v. Sympkins, 54 Tex., 622. In this view of the law the charge is not one of which appellant can complain. In this connection appellant objects to the refusal of first, fourth and eleventh instructions asked. We think, in so far as they are correct, these instructions were embodied in the charge given.

4th. In the seventh instruction refused, the court was asked to tell the jury to find for defendant, if plaintiff, on approaching the crossing, did not look for approaching trains, and that if he had done so, the injury would not have occurred. There is no statutory rule, or fixed rule of law, prescribing exactly what a party must do who approaches a railroad crossing. If aware of the fact, he is held to use such precautions as a prudent man would resort to under the circumstances. Attempts by the court to prescribe the exact thing to be done would be infringing on the province of the jury and charging on the weight of evidence. Moreover the instruction was rightly refused because it held the plaintiff bound to know when he approached a railroad crossing, when the evidence shows that there was no signal there to notify him, and he was in ignorance of the vicinity of the railroad until within fifty or sixty feet of the crossing.

· 5th. In refusing the eighth instruction asked the court did not err, because there is no rule of law relieving defendant from responsibility if plaintiff's team became unmanageable and rushed on the track. If the fright of the horses and their unmanageable state were occasioned by the near approach of the train, and that near approach had been occasioned by the failure to give the proper signals, such a rule would seem unreasonable and not sanctioned by authority. 1 Thompson on Neg., p. 420, and cases cited; Prescott v. East. R. Co., 113 Mass., 370; Pollock v. East. R. Co., 124 Mass., 158; R. R. Co. v. Ogier, 35 Pa. St., 71.

Our examination of the charge satisfies us that it is a fair presentation of the law applicable to the case. Notwithstanding the absence

of the required sign-board, plaintiff after actually discovering the crossing was required to conduct his further approach in such a manner as a man of ordinary prudence would use under the circumstances. If his failure to discover the approaching train in time to avoid the danger, and his want of preparedness to avoid the danger when discovered, were not caused or induced by the failure of the railroad employees to give the required signals, but were caused by plaintiff's own want of proper care, then the defendant was not responsible for the collision, unless indeed the railroad employees were remiss in not endeavoring to stop the train, when they saw, or should have seen, plaintiff's danger. This we think is the law of the case, and so far as affects the company's right to a reversal, was clearly stated in the charge. The judgment is affirmed.

Affirmed.

[Opinion delivered May 2, 1882.]