GULF, COLORADO AND SANTA FE RAIL-
WAY COMPANY, Appellant,

v.

C. R. LATHAM et al., Appellees.

No. 12839.

Court of Civil Appeals of Texas.

Galveston.

Feb. 16, 1956.

Rehearing Denied March 22, 1956.

Wigley, McLeod, Mills & Shirley and
Robert W. Alexander, Galveston, for ap-
pellant.

Jim S. Phelps, Houston, for appellee.

HAMBLEN, Chief Justice.

This suit was instituted in the District Court of Harris County by appellee, C. R. Latham, seeking to recover damages for personal injuries sustained in a collision between a truck driven by such appellee and a train owned and operated by appellant. Appellee Latham alleged acts of primary negligence on the part of operatives of appellant's train, and further sought to recover under the doctrine of discovered peril. Appellee, Pacific Employers Insurance Company, which had paid disability compensation and medical expenses to appellee Latham, intervened, seeking recovery of the amount so paid by it. At the conclusion of all of the evidence, appellees abandoned all allegations of primary negligence on the part of appellant and upon their request therefor issues upon the doctrine of discovered peril only were submitted to the jury. Upon findings made by the jury favorable to appellees, the trial court entered judgment in favor of appellee Latham in the sum of $130,000 and in favor of appellee Pacific Employers Insurance Company in the sum of $12,325, as assessed by the jury. Thereafter upon suggestion of the trial court, appellee Latham made and filed a remittitur in the sum of $29,507.64 and the judgment in his favor was reduced by that amount.

Such judgment is attacked by the appellant in 15 points of error by which four basic contentions are presented. Appellant first contends that there is no evidence in the record properly raising the issue of discovered peril. Next appellant contends that there is insufficient evidence in the record to support the jury verdict upon the doctrine of discovered peril. Thirdly, appellant contends that counsel for appellee Latham made improper argument before the jury because of which the judgment entered should be reversed and remanded; and finally contends that the verdict of the jury awarding damages in the sum of $130,000 was so excessive as to show bias and prejudice, thus necessitating a reversal and remand of the case.

These contentions will be treated in the order named.

Appellant's contention that there is no evidence raising the issue of discovered peril is presented by its points 1 to 7, inclusive. After most careful consideration, this Court has concluded that such points are not well taken and must be overruled. Our reasons for so concluding require a somewhat extensive statement of the factual background of the litigation.

This collision occurred between a White trailer truck owned by the J. H. Rose Truck Line and being driven by the appellee, C. R. Latham, and a motor car passenger train owned by the appellant, Gulf, Colorado and Santa Fe Railway Company, and being operated at the time by their employee-engineer, H. F. Vaughn. The collision occurred at the intersection of the appellant's railroad tracks and Highway No. 83 within the city limits of the City of Menard, Texas, on the 23rd day of September, 1950, at approximately 7 o'clock a. m. Appellee C. R. Latham was driving north on said highway and the train was traveling west. In order to facilitate our discussion of the facts, a plat which the parties have stipulated correctly represents conditions existing upon the ground is attached hereto as Exhibit A to this opinion.

Appellant's train consisted of two cars, the foremost composed of the engineer's cab and motor at the front and a baggage express car section to the rear. Appellee's truck was shown to be approximately 45 feet in length and of a weight, including its load, of between 47,000 and 48,000 pounds.

The following recitation of the material facts is taken from the appellant's brief, wherein it is contended have been set forth all of the evidence bearing upon the issue of discovered peril.

Appellant's engineer testified that on the morning of the collision he was coming into the station at Menard, which is located just west of the crossing where the collision occurred; that in his usual manner he had

slowed down his motor car train preparatory to making the station stop; that as he approached the crossing where the accident occurred he sounded the usual whistle and bell signals and that the motor car had an automatic bell on it which he had turned on some distance from the crossing and it rang continuously until after the collision occurred; that when his train was approximately 150 to 200 feet east of the crossing he was traveling about 25 miles per hour and that at that time he looked to his left and saw appellee Latham's truck on the highway about in front of the Humble Filling Station shown upon Exhibit A; that he then looked to his right and saw a dark colored automobile approaching the crossing from the north; that he started slowing his train down for the regular station stop at about the time he looked and saw appellee Latham's truck and the dark colored automobile; that the dark colored automobile was only about one-half the distance away from the crossing as was appellee Latham's truck and he realized it would reach the crossing first, and that he continued to watch it; that as he watched this dark colored automobile on his right, his train was slowing down and had the automobile not stopped at the crossing he could have stopped his train; that by the time he reached the crossing his train was traveling approximately 6 to 8 miles per hour; that the dark colored automobile stopped on the north side of the crossing as his engine was just entering the crossing, or just coming onto the east edge of the highway; that he then turned and looked back to his left, the direction from which appellee Latham was coming, and saw appellee Latham's truck coming into the side of his motor car just 3 or 4 feet away; that appellee Latham's truck crashed into the left side of his motor car just behind the engineer's compartment and right at the door leading into the engineer's compartment a split second after he looked to his left; that he never saw appellee Latham's truck between the time he saw it in front of the Humble Filling Station and the instant before the truck ran into the left side of his motor car; that at the speed his train was traveling at the time it was crossing the highway it would stop in approximately 8 to 10 feet after the emergency brakes were applied but that there was nothing he could do to avoid the collision after he looked back to his left and saw appellee Latham's truck bearing into the left side of his motor car.

Appellee Latham testified that he was an experienced truck driver and had left Houston the night before the collision at about 9 p. m. and had been driving all night; that he did not see the two railroad crossing signs as he approached the crossing where the collision occurred; that he had driven over the crossing four or six times prior to the date of the accident; that as he approached the crossing where the collision occurred he at no time saw appellant's motor car train until he was 85 feet from the crossing; that he immediately applied the brakes on his truck in an effort to stop; that when he saw he was going to hit the train and immediately before the collision he attempted to turn his truck to the left; that the front of the motor car struck the right side of his truck; that he was traveling approximately 26 miles per hour at the time he first saw the train when he was 85 feet from the crossing, and had reduced his speed to 6 miles per hour at the time of the actual collision; that the brakes on his truck were in perfect operating condition; that at some time after the brakes on his truck took hold he saw appellant's engineer turned in his direction but that he does not know whether the engineer was looking at him or saw him. He estimated the speed of the train at the time he first saw it at about 8 or 10 miles per hour; that the weather did not obscure his vision and when he finally saw the train he could see it plainly. There was no fog or rain and the highway was dry.

The evidence shows that a point directly in front of the Humble Filling Station above mentioned is 660 feet from the point of the collision. The plat attached as Exhibit A, as well as all of the evidence upon the subject, establishes that there was no obstruction between such point in front of the Humble Filling Station and a point on the

railroad track 200 feet from the point of collision.

•Appellee Latham, it must be said, contends that there is additional evidence of probative value raising the issue of discovered peril. However, we have concluded that assuming for our purposes the truth of appellant's assertion that the foregoing recitation represents all of the evidence, from our review of the authorities that alone is sufficient to raise such issue.

 The question of no evidence is one of law. It is established law in Texas that in order to raise the issue of discovered peril it is necessary to prove actual discovery of the perilous position of the party complaining. Turner v. Texas Company, 138 Tex. 380, 159 S.W.2d 112; Texas & P. Ry. Co. v. Breadow, 90 Tex. 26, 36 S.W. 410. It is further well established that actual discovery of the perilous position of the complainant may be established by circumstantial evidence only. Stinnett v. Gulf, C. & S. F. Ry. Co., Tex.Civ.App., 38 S.W.2d 615; Texas Electric Railway Co. v. Wooten, Tex.Civ.App., 173 S.W.2d 463. Both litigants concede that the law is as above stated and that the only issue in so far as appellant's points 1 to 7, inclusive, are concerned is whether the circumstantial evidence above set forth is sufficient to raise the issue. Furthermore, it is conceded by the appellant that the evidence establishes an actual discovery by the train operative but it is contended that it fails to establish that such discovery was in such time that by the exercise of all of the means at hand with safety to himself and his train appellant's operative could have avoided the collision.

 Both litigants have furnished this Court with able briefs in which have been collated most of the decisions in this State dealing with the doctrine of discovered peril. The basic theory of the doctrine has been set forth in numerous quotations from opinions by the Supreme Court and Courts of Civil Appeals of this State. We find upon carefully reviewing the authorities cited that none contained in either brief is to factually analogous to the question here presented as to be of more than persuasive value to this Court. In dealing with and determining what is admittedly exclusively a question of law it is felt that where possible this Court should undertake to follow such precedent as may exist applicable to the particular facts with which the court is dealing. In searching for some precedent wherein courts of this State have dealt with facts analogous enough to afford precedential value, we have been convinced that a proper application of the doctrine of stare decisis compels us to hold that the doctrine of discovered peril was raised by the evidence in this record. We base our conclusion primarily upon the decision of the Supreme Court of this State in the very early case of Texas & P. Railway Co. v. Chapman, decided in 1882 and reported in 57 Tex. 75. That case, which dealt with a collision between a wagon and a railroad train, in the trial court was submitted upon a general charge, and the opinion of the Supreme Court discusses objections made by the appellant to that charge. In so far as the doctrine of discovered peril is concerned the material facts appear in this quotation from the Court's opinion: "It was a freight train, and the conductor testifies that he was in the caboose in the rear and saw the plaintiff's wagon one-fourth of a mile from the crossing. He does not state whether he noticed him further after seeing him, or not. The engineer and fireman say they did not see him, * * *." The portion of the trial court's charge to which the appellant objected, in so far as it had reference to the doctrine of discovered peril, was as follows: "If the conductor of the train, before reaching the crossing, saw plaintiff driving along the road sufficiently far from the crossing to stop his team before the train reached it, he had the right to conclude that plaintiff would stop before reaching the crossing, and his failure to stop the train would not be such negligence as to render the defendant liable, unless he had time to stop the train after he saw that plaintiff was on the track or so near thereto that he could not avert the danger if the train

moved on." In overruling the appellant's objections to the quoted portion of the trial court's charge the Supreme Court said: "So it is complained of various paragraphs of the charge, that they submit to the jury the question whether defendant's employees discovered plaintiff on the track, or so near thereto that he could not extricate himself from danger, in time for them to have stopped the train, because it is said that there was no evidence to which it was applicable. There is evidence that the conductor, who was in the rear part of the train, saw plaintiff in his wagon one-fourth of a mile from the crossing, and whilst the evidence is silent as to whether the conductor continued to notice him, we think it sufficient to make the charge pertinent."

■■ This Court feels, in view of the doctrine of stare decisis, that if the Supreme Court has held that proof that an operative of a train saw the plaintiff one-quarter of a mile from a crossing that the doctrine of discovered peril was thereby raised that it must perforce be said to have been raised in the present case wherein the appellant's engineer admittedly saw appellee 660 feet from the point of collision. The only factual distinction that we are able to see is that in the cited case the record is stated to be silent as to whether or not the conductor continued to look at the plaintiff, whereas in the present case appellant's engineer stated affirmatively that he did not after first observing appellee thereafter see him until a split second before the actual collision. However, as we understand the Supreme Court's opinion, it was the fact that the operative had once observed the approaching plaintiff that raised the issue and we think it must be said that the jury was entitled to disbelieve appellant's engineer in his testimony that he did not again see appellee approaching. Such is clearly the holding of the El Paso Court of Civil Appeals in the case of Panhandle & S. F. Ry. Co. v. Napier, 90 S.W.2d 926, 928, writ dismissed, which while not necessarily binding upon this Court under the doctrine of stare decisis is factually so analogous to the present case as to be highly persuasive. The

facts of that case material to our present discussion and the court's conclusions thereon are disclosed by the following excerpt from the opinion: "The fireman on appellant's train testified that he first saw the lights on the automobile when it was past the middle of the curve which leads to the crossing; that the engine at that time was 50 or 60 feet west of the crossing; that the bell on the engine was ringing; that he told the engineer nothing about the approaching car and did nothing himself; that no whistle was blown after he saw the lights; and that after seeing the lights on the approaching car he ceased to look in that direction and leaned out of the cab looking up the track in the direction the train was going.

"From these facts and the further fact that the automobile struck the engine only a few feet from a point under the place where he was sitting, the question of whether he saw the automobile after the danger became imminent was one for the jury, and it would not be bound by his statement that he did not see the automobile again after he first saw its lights."

Upon the authority of these two cases, neither of which has been cited by either litigant, this Court feels it is compelled to conclude that the doctrine of discovered peril has been raised in the instant case. We do not consider the case of Ford v. Panhandle & S. F. Railway Co., 151 Tex. 538, 252 S.W.2d 561, by the Supreme Court of Texas so heavily relied upon by appellee to be so factually analogous to the case at bar as to be applicable to the facts here presented.

■ Appellant's second contention is that the verdict of the jury upon which its liability rests is so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong. The points presenting such contentions invoke the fact jurisdiction of this appellate Court. After reviewing most carefully the entire record before this Court, which we are called upon to do when such point is properly raised as it is here, we have concluded that appellant's points are well taken and must be

sustained. This conclusion requires a reversal of the judgment rendered below and a remand of the case for retrial. We do not undertake to rationalize upon the question as to how a court may properly say that there is evidence in the record sufficient as a matter of law to raise an issue but that such facts are insufficient to support the jury's verdict thereon. As early as 1871 the Supreme Court of Texas, in the case of Von Harten v. Courtade, 35 Tex. 434, 435, stated that district courts should adopt a more liberal policy in granting new trials whenever verdicts are contrary to the weight of the evidence. Subsequent to the decision of that case our Constitution was amended so that under the provisions of Article V, Sec. 6, Vernon's Ann.St., the jurisdiction to review the facts of a case on appeal is conferred upon courts of civil appeals. The limitations of that jurisdiction are discussed at length by the Supreme Court of Texas in the case of Electric Express & Baggage Co. v. Ablon, 110 Tex. 235, 218 S.W. 1030. Our jurisdiction has been properly invoked and it is our duty to pass upon the fact question thereby presented to us. Houston, E. & W. T. Ry. Co. v. Lavine, Tex.Civ.App., 255 S.W. 448.

As hereinabove pointed out, we have reached our conclusion that there was evidence in this case requiring the submission to the jury of the issue of discovered peril upon the authority of the Supreme Court's decision in the case of Texas & P. Railway Co. v. Chapman, supra. We do not consider it to be our function to rationalize in regard to that holding but to apply the same under the doctrine of stare decisis. However, in so far as our consideration of the factual question of the sufficiency of the evidence to support the jury's verdict, we think that the limitations of the Supreme Court's holding in that case must be examined. In so far as it is applicable to the facts in this present case, we construe that decision as holding that the fact that the appellant's operative observed the appellee's approaching truck when it was 660 feet from the point of collision was sufficient to raise the issue. We think it must be further stated that absent any other proof in the record,

that proof alone would be sufficient to support a jury finding in favor of the appellee under the doctrine of discovered peril. However, we further think that it must be remembered that the charge which the Supreme Court approved contained these words: "If the conductor of the train, before reaching the crossing, saw plaintiff driving along the road sufficiently far from the crossing to stop his team before the train reached it, he had the right to conclude that plaintiff would stop before reaching the crossing, and his failure to stop the train would not be such negligence as to render the defendant liable * * *." We think it beyond dispute that appellee's truck when 660 feet from the point of this collision was sufficiently far from the crossing to enable appellee to stop his truck before reaching the point of collision. We think it further manifest that if it be assumed as a fact that the engineer of appellant's train did not thereafter see appellee's truck approaching that the doctrine of discovered peril would not be raised by the mere fact that he did see him 660 feet distant from the crossing. It follows, therefore, that in the determination of the points here considered, only that evidence is material which bears upon the question of whether appellant's engineer had time to stop the train after he saw that appellee was so near the track that he could not avert the collision if the train moved on.

Viewed from the appellee's standpoint, the evidence which supports the jury verdict consists primarily of that of the testimony of appellee himself. In order to support a finding under the doctrine of discovered peril it is necessary in our opinion to accept the testimony of the appellee as to how this collision occurred. Briefly his testimony was that he was traveling at 26 miles per hour and when 85 feet from the crossing he discovered the train approaching. At that moment he places the train 25 feet east of the highway upon which he was traveling. He thereupon applied his brakes and had slowed to approximately 6 miles per hour when the train ran into the right front side of his truck. The only corroboration which we find in the record

consistent with appellee's testimony as to the manner in which this collision occurred consists of the testimony of two State Highway patrolmen who arrived upon the scene 30 minutes or more after the collision had occurred and by observing the position of the vehicles undertook to reconstruct its happening, and in so doing they testified to the conclusion that the front of appellant's train struck the right front side of appellee's truck.

It must be kept in mind that the evidence is undisputed that the train at all times material was traveling at between 6 and 10 miles per hour; that by the application of the emergency brake it could be brought to a stop in a distance of approximately 10 feet. All of the speed, time and distance formulae which appellee argues in support of the jury verdict depend in our opinion upon an acceptance of the proposition that the appellant's train was so far east of the intersection when the operator thereof would first be required to realize that appellee could not stop his truck, that by the application of emergency brakes it could have been stopped in time to avoid the collision.

As opposing the evidence in support of appellee's theory of the manner in which this collision occurred, appellant has produced four disinterested eyewitnesses who actually observed the collision and who testified to substantially the same material facts. Two of such witnesses, Godfrey and Joplin, were standing in front of the J. P. Highsmith Wool & Mohair Company Building shown upon Exhibit A, patently where they could observe the collision. The witness Godfrey testified that he heard the train blow its whistle as it approached the crossing and saw the train prior to the accident, and also saw the truck approaching; that the truck was making a lot of noise and was traveling at a high rate of speed which he would estimate at about 40 miles per hour; that he did not notice whether or not the truck applied its brakes but that it did not appear to him that the truck slowed down any appreciable amount before crashing into the left side of the train; that the front end of the train was at about the west edge of the highway when the truck ran into the left side thereof, and that the truck struck the left side of the train just behind the door leading into the engineer's compartment; that the truck hit the train with such terrific force that it raised the train up in the air and tilted it over to the right and the train appeared as if it would turn over. The witness Joplin testified that he heard the train give the usual whistle signals as it approached the crossing; that he heard the brakes on the truck prior to the collision and that he looked around just a second or two before the truck ran into the left side of the train; that the front end of the train was across the highway at the time the truck ran into the left side thereof, and that the truck hit the train just behind the door going into the engineer's compartment and that the truck hit the train with such terrific force that it knocked the train off of the track on which it was operating.

The record contains many photographs, admitted without objection, which reflect the position of the train and the truck, respectively, immediately after the collision, as well as the physical damage to each which resulted from the collision. We have carefully examined all of such exhibits. We attach one such picture as Exhibit "B" to this opinion, which appears in the record as Plaintiff's Exhibit No. 21. The testimony reflects that this picture was taken after a wrecker had pulled the truck somewhat away from the train. We attach it because in our opinion it so graphically refutes appellee's theory of how this collision occurred, and so strongly corroborates the testimony of the eyewitnesses which has been set forth. We think, for instance, that appellee's testimony that his truck was traveling six miles an hour at the time of the collision is contrary to the dictates of common sense, when considered in the light of the undeniable physical damage to the truck and train evidenced by this picture. We think that appellee's contention that the front of the train struck the right front side of the truck is clearly inconsistent with the evidence reflected therein. We do not question the good faith of the highway patrolmen in reaching the conclusions to which they testified; we say that their tes-

timony is, in our judgment, at variance with elementary laws of physics and common knowledge. We point, for instance, to the almost total demolition of the entire front of the truck, the almost total absence of damage to the front of the train, and the heavy damage to the train to the rear of the door leading to the engineer's cab. And in particular, we point to the evidence in the picture that the train, as a result of the collision, was propelled in the direction in which the truck was moving a distance of

several feet, and came to rest entirely off of the rails upon which it had been operating. This picture alone demonstrates to this Court that appellee's proof relative to the manner in which this collision occurred is so contrary to the physical facts as to constitute no evidence at all. See Talley Transfer Co. v. Cones, Tex.Civ.App., 216 S.W.2d 604. In any event, the testimony of eyewitnesses as to the manner in which the collision occurred, coupled with the demonstrative evidence of the photographs in this Court's opinion so clearly overwhelms the proof offered by appellee upon his theory of the case as to render the jury's verdict favorable to appellee manifestly wrong. Reconstructing the collision in a manner compatible with what we consider to be the overwhelming weight and preponderance of the evidence, it appears to this Court by the application of speed, time and distance formulae that at any moment prior to the collision at which appellant's engineer should have realized that appellee would not stop or could not stop, even assuming that he was at all times observing appellee's truck, appellant's train had already so far entered the highway that had it been stopped within the necessary 10 feet the collision would nevertheless have resulted.

■ Our Supreme Court has in numerous decisions pointed out that the doctrine of discovered peril is a humane doctrine. It has been said that it is contrary to human nature for one person after discovering the perilous position of a fellow human being to nevertheless fail to use the means at hand to avoid injury. In the case of Parks v. Airline Motor Coaches, Inc., 145 Tex. 44, 193 S.W.2d 967, 969, the Supreme Court used the following language: "The rule for allowing recovery of damages under the doctrine of discovered peril is exacting. * * * The basis for recovery rests upon humane principles and public policy, and not upon the negligence or dereliction of the injured person. * * * That the driver was guilty of violating those humane principles will neither be imputed nor presumed, but such guilt must be proved by competent evidence." In the case of Sugarland Industries v. Daily, 135 Tex. 532, 143 S.W.2d

931, 932, objection was made to an argument by counsel for the defendant to the effect that to find a person negligent under the doctrine of discovered peril was almost the same as finding that such person deliberately and consciously caused the accident. The Commission of Appeals, speaking through Judge Smedley, wrote as follows: "We believe the argument is nothing more than the expression of counsel's belief that the conduct of one who, after discovering and realizing the peril of another in imminent danger of being injured, fails to use ordinary care to avoid injuring such other person is in fact very nearly the equivalent of deliberate and intentional misconduct.

"And so it seems in fact to be. It has been so characterized." Wilson v. Southern Traction Co., 111 Tex. 361, 234 S.W. 663.

■ In the present case, the record reflects that as a result of this collision appellant's engineer was thrown from his seat and received a broken pelvic bone and was in the hospital for approximately two weeks and off work in excess of two months as a result of his injuries. Therefore, to sustain the jury's verdict in this case, we must, in addition to finding that he deliberately and consciously caused the accident and violated the humane principle pointed out by the Supreme Court in Parks v. Airline Motor Coaches, Inc., supra, also find that he violated the even more natural human instinct of self-preservation. We are unwilling to permit the jury verdict in this case to stand in view of the overwhelming preponderance of the evidence which militates against it. We, therefore, sustain appellant's points 8 through 12, inclusive.

■ Appellant's points 13 and 14 are addressed to the proposition that counsel for appellee indulged in improper argument before the jury of such prejudicial and harmful character as to require a reversal of the judgment rendered. The argument complained of is that in which counsel charged that there was no black automobile upon the highway as testified to by appellant's engineer but that he had falsely so testified upon the instruction of appellant's claim agent. There is no support in the

record for such charges. The argument clearly imputed perjury on the part of the engineer and subornation of perjury on the part of the claim agent. The argument is undoubtedly inflammatory and prejudicial and is of a type which has been frequently condemned by appellate courts of this State. The record reflects that appellant made no objection to the argument when it was made ánd requested no instruction from the trial court with reference thereto. Wherefore, appellee insists that any error reflected in such argument was waived. We do not deem it necessary to pass upon the question of whether or not the argument complained of was of such character that its harmful effect could not be cured by proper instruction by the trial court. While we consider the question as borderline, the situation is not one which will necessarily recur upon a retrial.

See also 270 S.W.2d 250.

■ The question of excessiveness of the verdict, raised by appellant's point 15, is manifestly moot.

The judgment of the trial court is reversed and the cause remanded for retrial.

GANNON, J., not sitting.